[Civ. No. 487.    Third Appellate District.—August 1, 1908.]

HENRI BOURIE, Appellant, v. SPRING VALLEY WATER COMPANY, Respondent.

NEGLIGENCE OF WATER COMPANY—CHECK-VALVE IN FEED-PIPE—EX-PLOSION OF BOILER—KNOWLEDGE—PLEADING—CAUSE OF ACTION.—In order that a complaint for negligence of a water company in placing a check-valve in a feed-pipe supplying water to a boiler in plaintiff's laundry, causing the same to explode, may state a cause of action, it must aver directly and unequivocally that the water company and its servants then knew that plaintiff was customarily using said pipe, though wrongfully, for the purpose of relieving the boiler of excessive pressure, and that he had provided no other means of relieving the same, and that, without notifying plaintiff thereof, defendant attached an appliance to the feed-pipe, the necessary and inevitable effect of which was so to increase the

pressure of hot water and steam in the boiler as to cause the explosion thereof.

ID.—INSUFFICIENT COMPLAINT—JUDGMENT UPON DEMURRER.—A complaint which, though containing other necessary averments, fails to aver that at the very time of attaching the check-valve to the feed-pipe the defendant knew that plaintiff was using the feed-pipe as a vent, and had no other means of relieving the boiler of excessive pressure, fails to state a cause of action; and judgment was properly rendered for the defendant upon a general demurrer thereto.

ID.—ABSENCE OF KNOWLEDGE—RIGHTS OF WATER COMPANY—DUTY OF PLAINTIFF.—In the absence of knowledge charging the water company with gross negligence as to the plaintiff, it had the right to attach a check-valve to the feed-pipe to preserve the purity of the water for the use of other customers, and had the right to assume that plaintiff had discharged its duty by equipping its boiler with safety appliances for relieving the pressure.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   John Hunt, Judge.

The facts are stated in the opinion of the court.

J. F. Chapman, for Appellant.

A. E. Shaw, for Respondent.

HART, J.—The court below sustained a demurrer to the second amended complaint without leave to amend. Judgment was thereupon entered in favor of the defendant. This appeal is from said judgment.

The action was commenced for the purpose of recovering damages from the defendant for injuries sustained to certain property of plaintiff, and which are alleged to have been caused through the negligent acts of the defendant.

The defendant is a corporation, whose principal place of business is in the city and county of San Francisco, and is engaged in the business of supplying water to the inhabitants of said city and county for domestic purposes.

The second and third paragraphs of the complaint recite the history of the transaction out of which the controversy arises, and contain the gravamen of the complaint, and we therefore here present said paragraphs in their entirety:

"II.    That on the 12th day of July, 1905, at the time of the explosion hereinafter mentioned, and for a long time prior thereto, and including the month of June, 1905, said plaintiff was maintaining and operating a laundry at number 514 Central Avenue, in said City and County of San Francisco; that during all of said times, said plaintiff used in said laundry, a galvanized iron boiler of large capacity, to wit: of one hundred gallons of water, for the purpose of heating water in said boiler, to be used in the operation of said laundry, all of which was well known to said defendant, its servants and employees, during all of said time, and at the time the check-valve was attached to the pipe as hereinafter mentioned; that during all of said time said defendant, through a pipe attached to said boiler, supplied water to said boiler, from a main of said defendant in the adjoining street, for the purpose of being used in said laundry; that said plaintiff paid said defendant the charges demanded and required by said defendant for the water thus supplied.

"III.    That on or about the 20th day of June, 1905, said defendant, by its servants and employees, and without the knowledge or consent of plaintiff, attached a check-valve, to said pipe through which said defendant supplied water to said boiler, as hereinbefore stated, to wit, in the feed-pipe leading from said main to said boiler;

"That said check-valve thus attached, confined the hot water and steam in said boiler and thus prevented the same from passing through said feed-pipe so as to relieve said boiler from excessive pressure, and that by reason of said check-valve being thus attached, the pressure of the hot water and steam in said boiler was greatly increased, and in consequence thereof said boiler did, on said 12th day of July, 1905, explode with great force and violence, and by reason thereof, the said building where said laundry was maintained and operated was greatly damaged and injured; That prior to the time said check-valve was thus attached to said pipe sufficient of the hot water and steam in said boiler did pass through said feed-pipe so as to relieve said boiler from excessive pressure.

"That at the time said check-valve was thus attached to said pipe the said defendant, its servants and employees, who thus attached said check-valve to said pipe, well knew that

the operation of said check-valve when thus attached to said pipe would be to confine the hot water and steam in said boiler and prevent the same from passing through said feed-pipe so as to relieve said boiler from excessive pressure of said hot water and steam, and said defendant, its servants and employees, should reasonably have then known that thus attaching said check-valve to said pipe was liable to cause said boiler to explode. Said plaintiff had no knowledge or information that said check-valve had been attached to said pipe until after the explosion hereinbefore mentioned occurred.

"That the act of attaching said check-valve to said pipe as above stated was a careless and negligent act on the part of said defendant, and its said servants and employees."

The demurrer is both general and special. We are of the opinion that the general demurrer was properly sustained. It is, therefore, unnecessary to refer to the special demurrer.

The contention of the respondent is that the allegations of the complaint disclose such contributory negligence upon the part of plaintiff in the management of the boiler, the bursting of which as alleged caused the damage complained of, as to destroy his right of recovery, inasmuch as there is nothing in said complaint showing that plaintiff had equipped said boiler with safety appliances for relieving the pressure.

It must be conceded that it was and is the duty of the defendant to invoke the use of such appliances in connection with its pipe system as will effectually keep water supplied by it and once used from returning through the feed-pipes to the mains, thereby preventing the pollution of the water in the mains, and thus the impairment of its potableness or use for general domestic purposes. It must further be conceded that the plaintiff had no right or authority to use the feed-pipe for the purpose of relieving the boiler of excessive pressure, but that it was his duty to provide, in connection with said boiler, safety appliances or a vent for the escape or venting of the steam from said boiler and thus relieving it of inordinate pressure.

It may also be stated as a well-settled rule of the law of torts that, if the plaintiff had used, though wrongfully, the pipes of the defendant for the purpose of relieving the said boiler of excessive pressure, and the defendant knew that plaintiff was and had been accustomed to so using said pipes,

and that the plaintiff himself had provided no other means for disposing of surplus steam and thus relieving the pressure, and the defendant installed a check-valve in the feed-pipe through which it conveyed water to the premises and for the use of plaintiff, knowing that plaintiff was using said pipes for that purpose, and had knowledge and knew that the effect of the installation of said check-valve in said feed-pipe would be to cause the boiler to explode, and the defendant under such circumstances established said check-valve in said feed-pipe without notifying the plaintiff of the fact, the defendant would be liable for any damage sustained by plaintiff by reason of the bursting of said boiler because of the installation of said check-valve in said feed-pipe. The principle thus enunciated may be found to be at the bottom of that class of cases where a person, without right or license, habitually passes over the premises of another. If the owner of such premises should dig a ditch across the pathway over which he knew the trespasser was accustomed to pass at night, without informing or notifying such trespasser of the existence of the ditch, and the latter, as was his custom, should undertake to pass over the pathway in an ordinarily careful manner and fall into such ditch and sustain injuries thereby, there could be suggested no reason in law why the tort-feasor should not be required to respond in damages for his act, amounting, as it would, under such circumstances, to criminal negligence at least. If deliberately done, with the intent that it should result in injury to the trespasser, it would, manifestly, amount to a positive act of criminality. The fundamental principle of this proposition is that a person suffering from the wrongful act of another must appeal to the law for his remedy. He cannot, in other words, as a rule, take the law into his own hands and furnish his own means of redress.

In the case at bar, as before observed, if the plaintiff by direct and unequivocal averments had disclosed knowledge on the part of the corporation and its servants that he was using said feed-pipe as his only available means of relieving the exploded boiler of undue pressure, and without notifying plaintiff thereof, the defendant attached an appliance to said feed-pipe, the necessary and inevitable effect of which was to so increase the pressure of hot water and steam in the boiler as

to cause the explosion of the same, then we should say that without doubt he had stated a cause of action.

But we think the complaint is fatally defective in the respect to which we refer. The only allegation in the complaint which in anywise even approximately meets the criterion by which we believe and have declared that the sufficiency of such pleading must be tested is found in the following averment: "That at the time said check-valve was thus attached to said pipe the said defendant, its servants and employees, who thus attached said check-valve to said pipe, well knew that the operation of said check-valve when thus attached to said pipe would be to confine the hot water and steam in said boiler and prevent the same from passing through said feed-pipe so as to relieve said boiler from excessive pressure of said hot water and steam," etc., followed by an averment that the defendant and its employees should have personally known that the effect of attaching said check-valve to said pipe would be to cause the boiler to explode.

This allegation is not, in our opinion, sufficiently direct and specific to bring the matter of the conditions existing as to the operation of said boiler at the time of the installation of the check-valve to the knowledge of the defendant. It may be true that a strong inference from said allegation, referring as it does to the particular check-valve which caused the trouble, is that the defendant must have known that plaintiff had been and was using the feed-pipe as a vent through which the boiler was relieved of excessive pressure. But we think that in a case where, as here, the plaintiff was primarily at fault, or engaged in doing a wrong as against the defendant, and had failed to provide the boiler itself, as it was his duty to do, with safety appliances, to perform functions which he wrongfully forced upon the feed-pipe, not intended to be so used, he should be required to make it appear absolutely clear and unquestionable that the act of the defendant constituted the grossest kind of negligence—negligence so flagrant as to fully overcome or eliminate as a factor in the case the wrongful act of the plaintiff himself.

In other words, the complaint should not only show, as it does clearly enough, that the defendant and its employees failed to give the plaintiff notice of the installation of the check-valve at the very time it was adjusted to the pipe, or

notice of their intention to connect the same with said pipe previously to its installation, but it should be made to clearly appear that the defendant knew that plaintiff was at the very time of the installation of said check-valve using said feed-pipe as a vent and had no other means of relieving the boiler of excessive pressure. The latter fact does not clearly and distinctly appear in the complaint, and failure to so state it leaves the plaintiff in the position of asking for a judgment for damages to his property to the infliction of which he contributed by his own negligence, or which would not have occurred but for his own inexcusable remissness. As stated, it was defendant's duty to connect a check-valve to the feed-pipe, if, in its judgment, it was necessary to do so to preserve the purity and potableness of the water it was supplying for domestic purposes. There was no duty cast upon it to assume that the plaintiff had not provided appropriate means for the protection and preservation of his own property. To the contrary, the defendant had the right to assume, if indeed the matter ever at all occurred to "its mind," that the plaintiff had done his duty by equipping his boiler with all the necessary appliances for the safe and proper operation thereof.

The plaintiff was afforded two opportunities to amend his complaint so that it would state facts sufficient to overcome the objections raised to it by the general demurrer. We must assume that the questions presented were fully discussed and argued before the court below, and the plaintiff thus made thoroughly familiar with the particular respect wherein his pleading was deficient. It is, therefore, probable that the plaintiff is without the facts necessary to bring himself within the views herein expressed on the allegations requisite to state a cause of action against the defendant. As the supreme court says in *Dukes* v. *Kellogg,* 127 Cal. 563, [60 Pac. 44], "the failure to make a good pleading probably arises in a lack of facts rather than in the fault of the pleader."

For the reasons set forth herein, the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.