643 P.2d 832

Stevan PUGMIRE and Julie Pugmire, husband and wife; Richard Jeppson and Karen Jeppson, husband and wife; James Tullis and Joanne Tullis, husband and wife; Fred Kase and Sue Kase, husband and wife; John K. Albano and Kathy Albano, husband and wife, Plaintiffs-Appellants.

v.

Boyd JOHNSON, Vernal Horton and Bill Howell, Bannock County Commissioners; and Herschel Cates, Bannock County Road Superintendent, Defendants-Respondents.

No. 13448.

Supreme Court of Idaho.

March 25, 1982.

Randall D. Schulthies, Pocatello, for plaintiffs-appellants.

Garth S. Pincock, Pros. Atty. and Steven A. Thomsen, Chief Deputy Pros. Atty., Pocatello, for defendants-respondents.

THE PREVIOUS OPINION IN THIS MATTER IS WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR

BAKES, Chief Justice.

Plaintiffs appellants are residents of the Caribou Acres Subdivision, an unincorporated area of Bannock County, Idaho. Plaintiffs sought to have certain roads declared

public highways and to require defendant respondents, Bannock County commissioners and road superintendent, to maintain the roads as part of the public highway system. The district court denied plaintiffs' motion for summary judgment, and granted defendants' motion for summary judgment. Plaintiffs appeal. We reverse.

## I

The first issue before this Court is whether, viewing the facts and all reasonable inferences to be drawn therefrom most favorably to appellants, there is any evidence in the record that Bannock County had accepted the roads in question, thereby precluding the district court from granting a summary judgment that Bannock County had no continuing duty to maintain those roads. I.R.C.P. 56(c); *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 625 P.2d 417 (1981). The evidentiary facts are virtually undisputed, although in some respects, notably the absence of the recorded plats from the record, they are inadequate. However, viewing what is there most favorably to appellant, the record indicates that the Caribou Acres Subdivision plat was originally recorded on or about December 13, 1960. Mr. Melvin Anderson replatted and rerecorded Caribou Acres Subdivision on October 26, 1964, and began developing the area. While neither plat is contained in the record, other evidence in the record indicates that Caribou Acres included at least three roads, the subject of this dispute. Bannock County provided maintenance on at least some of the roads in the subdivision from 1969 through 1978 when further maintenance was refused. County maintenance included grading, weed control, gravel surfacing, and snow removal, plowing and sanding when necessary throughout the year. The county apparently also provided stop signs and street signs. The roads were open for public use and were not restricted to use by Caribou Acres residents. At the time appellants filed their complaint, the maintenance had ceased, and the roads were snow covered and in disrepair, allegedly preventing safe and normal passage to appellants' homes.

County acceptance and recordation of subdivision plats was governed in 1960, the year of original platting and recording, by I.C. § 50–2502. At that time, I.C. § 50–2502 provided:

"No plat of any town site, or addition to any town, village or city, or subdivisions of any tract of land in this state, shall be accepted for record by the recorder of any county unless said plat shall have first been submitted to the city council, board of trustees or other governing body of the town, village or city to which said town sites, additions or subdivisions of any tract of land in this state belong, . . . and have been accepted and approved by the said city council, board of trustees or other governing body . . .; and shall have written thereon the acceptance and approval of the said city council, board of trustees, or other governing body of the town, village or city to which said town sites, additions or subdivisions of any tract of land in this state belong, and to which they are platted . . . ."

The final provision of I.C. § 50–2502 stated:

"[P]rovided, however, that if any subdivision of any tract is not within the corporate limits of an incorporated city, town or village the plat thereof shall be submitted, accepted and approved by the board of commissioners of the county in which the tract is located in the same manner and as hereinafter provided for submission, acceptance and approval by the governing body of the city, town or village involved in cases where such tracts are within the incorporated limits thereof."

Since the record in this case establishes that the plat and the replat were recorded, presumably it was accepted by the Board of County Commissioners of Bannock County at the time. The record contains a letter dated January 16, 1962, signed by Vernon H. Powell, the then Bannock County engineer, stating among other things that "all roads and streets [within the subdivision are] donated to public use forever." Based upon that record, the district court erred in

granting summary judgment wherein it concluded that the roads in question were not a part of the county road system.

■ Furthermore, sales of several lots within the subdivision were made, and construction financing was obtained with particular reliance upon several written representations made by various members of the board of county commissioners of Bannock County that the roads would be maintained by Bannock County. In *Boise City v. Fails*, 94 Idaho 840, 499 P.2d 326 (1972), this Court held that "[s]ubsequent to the filing of the plat, ... lots [were sold] to a number of individuals describing the property in the various conveyances by lot and block number as referred to in the plat. Sales of such lots by reference to lot and block following recording of a plat constitutes a dedication of the streets and alleys to public use." *Id.* at 842, 499 P.2d 326, at 328. In the *Fails* case, this Court held that even though a street in such a subdivision had never been constructed and had been encroached upon by the adjoining property owners' buildings and landscaping, it remained nevertheless a public street, and the city could force the removal of the encroachments in order to open the street. The reason for this rule is explained in *Smylie v. Pearsall*, 93 Idaho 188, 457 P.2d 427 (1969), as follows:

"One purpose of this doctrine is to protect the interests of purchasers of platted lots and their reliance upon the valuable maintenance of such public areas." *Id.* at 191, 457 P.2d at 430.

Earlier Idaho cases are to the same effect. *Hanson v. Proffer*, 23 Idaho 705, 132 P. 573 (1913); *Boise City v. Hon*, 14 Idaho 272, 94 P. 167 (1908). Again, viewing the record most favorably to the appellants, as we must, we conclude that the trial court erred in ruling as a matter of law that the roads described in plaintiffs' complaint were not public highways which were a part of the county road system which the county was not obligated to maintain. *See* I.C. § 40–106 and –133.[1]

II

Appellants also argue that I.C. § 40–103 provides, in part, that: "Roads laid out and recorded as highways, by order of the board of commissioners, *and all roads used as such for a period of five (5) years, provided the latter shall have been worked and kept up at the expense of the public*, or located and recorded by order of the board of commissioners, *are highways*." (Emphasis supplied.) If public use and maintenance of a road renders a road a highway within the definition of I.C. § 40–103, then appellants argue that it is part of the "county road system" as the result of I.C. § 40–109.[2] We agree.

■ The record clearly shows that at least some of the roads in question have been used by the public for longer than five years and maintained at public expense by the county from 1969 to 1978, a period of nine years. Bannock County's regular maintenance and the extensive public use disclosed in the record are sufficient to es-

---

1. In an apparent further attempt to permit the counties to control the number of public highways coming into the county road system, in 1967 the legislature passed I.C. § 50–1313 which, as amended in 1978, reads as follows:

   "No street or alley or highway hereafter dedicated by the owner to the public shall be deemed a public street, highway or alley, or be under the use or control of said city or county wide highway district unless the dedication shall be accepted and confirmed by the city council or by the commissioners of the county wide highway district."

2. "40–109. STATE HIGHWAY, COUNTY ROAD AND CITY STREET AND HIGHWAY AND GOOD ROAD DISTRICT SYSTEMS ESTABLISHED AND DEFINED.—There shall be

a system of state highways in the state, a system of county roads in each county, a system of municipal streets in each incorporated village and city, and a system of highways and good roads in each highway and good roads district. These systems are hereby defined as follows:

   . . . .

   "(b) A 'county road system' shall comprise all public highways in a county except those included within the state highway system, those included within municipal street systems of incorporated cities and villages, and those under federal control; but highway districts and good road districts shall have jurisdiction over the highways in their respective districts.
   . . . ."

tablish that roads which have been so maintained and so used are county roads under I.C. §§ 40–103 and –109. *State v. Nesbitt*, 79 Idaho 1, 310 P.2d 787 (1957); *Thiessen v. City of Lewiston*, 26 Idaho 505, 144 P. 548 (1914) (use by the public is sufficient acceptance of a dedication for the purpose of a way to invest a right-of-way to the public); *Meservy v. Gulliford*, 14 Idaho 133, 93 P. 780 (1908) (public use of a highway for the statutory period and keeping it in repair at public expense is all that is necessary to establish a highway by prescription). This Court stated, in *Gallup v. Bliss*, 44 Idaho 756, 262 P. 154 (1927), the statement that:

> "[I]f a municipal corporation in fact accepted an addition and assumed to take charge of and keep its streets in repair, it would be liable for a neglect of its duty in that regard. In other words, the right being one it was authorized to exercise, and having exercised the same, . . . it must perform its duty in that regard. . . . *Village of Imperial v. Wright*, 52 N.W. 374 (Neb.1892)." *Id.* at 762, 262 P. at 156.

Although *Gallup* was a case imposing civil liability on a city for failure to maintain a road, the duty to maintain roads set forth therein applies equally to counties in regard to roads maintained within the county for the requisite period prescribed by I.C. § 40–103. The county commissioners, by I.C. §§ 40–106 and –133, must carry out that duty.

Having accepted at least some of the roads in Caribou Acres through public use and maintenance for periods up to nine years, Bannock County cannot now be allowed to deny responsibility for those roads, leaving the residents of Caribou Acres without proper access to their homes. However, on this record we cannot say whether all of the roads within the subdivision were maintained for the requisite five-year period, and therefore the cause must be remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded. Costs to appellant.

McFADDEN, BISTLINE and SHEPARD, JJ., concur.

DONALDSON, J., concurs in Part II, but dissents in Part I.